Justice Brennan had a death in the family and won't be here this morning, but he has read everything and in fact We'll be listening to the oral arguments, but he won't be joining us this morning. So please keep him and his family in your thoughts and prayers Counselor you're ready to proceed this morning. Can I ask the clerk to call the case? I'm Steve Rowe with the Office of the State Appellate Defender, 3rd District for the Petitioner Appellant, Warren Gonzalez. May it please the court, if you are a trial attorney and you have a client who has made a video recorded confession to two counts of predatory criminal sexual assault of a four-year-old victim, is 42 years old and has a criminal history including multiple offenses, more than one domestic battery offense, and that client is facing a 12 to 120-year aggregate prison term on those counts. And that client then gets an offer to plead guilty to just one count for 18 years, which is at the 6th percentile of the 12 to 120-year range. If you're that trial attorney, you tell that client, take that offer. You don't tell the client, you don't suggest that that might be too much time. You don't suggest that the client could do better than that, because the reality is there's no realistic chance that the client can do better than that. There's no realistic chance of an acquittal in light of the video recorded confession to both counts. And there's no realistic chance that after the client is inevitably convicted that the client will get a better sentence than the 6th percentile range, 6th percentile, less than 6th percentile actually of the sentencing range in light of the victim's young age, the client's being 42, and the client's having multiple prior convictions including for domestic battery. This appeals from the state's dismissal of Juan Gonzalez's post-conviction petition. In his petition, he alleged that under circumstances similar to those that I've described, his attorney advised him to turn down the 18-year offer. He then, upon receiving counsel's advice, turned it down and turned open plea and was subsequently sentenced to a much more severe sentence, essentially de facto life sentence of 40 years. Mr. Burrell, let me ask you a question, just to make clear. Is this his first post-conviction petition? Yes, it's his first petition. Thank you. Yes. And so he alleged that his attorney's advice was unreasonable. This court should find that it was for the reasons essentially that I've argued. The language that he used at one point specifically says on page 191 of the common law record of his petition that his attorney advised him to turn down the 18-year offer. At another point in his petition that the state talks about in its brief, he used different language and said that his attorney told him about the offer, that's too much, right, implying to the petitioner that he shouldn't accept the plea offer and could get a better plea offer. That's the language that he used there. I think under the standards of first-stage pleading that this court could just look at the fact that there was an allegation that his attorney told him to turn down the 18-year offer and wouldn't have to get to that other, that's too much, right, language. But even if this court does, I believe that language would clearly still be unreasonable. We do have to accept the allegations at this point in this first-stage post-conviction petition is true and construed them liberally. And if we look at that, it basically says that by saying that's too much, right, counsel was telling him to reject the offer or at least implying that he could do better than the 18 years, which simply was unrealistic and unreasonable for counsel to advise him in that way. Counsel, you don't talk at all about the interpreter. You want to address that issue about the fact that there was an interpreter or the lack of a good interpreter. Sure. Absolutely. Yes. There was an interpreter because my client appears to have limited English proficiency and that could obviously come into play during some of the lower court proceedings. But there was an interpreter. And as far as the petition, it certainly could make it more difficult to make the language exactly as, you know, an attorney would do so at a subsequent second stage of the proceedings. So I do think the fact that there might be limited English proficiency and just the fact that my client only has a sixth-grade education could explain maybe some of the difficulties or confusion in the language that he wrote in his post-conviction petition. And it's supposed to be liberally construed at this stage to take into account that many clients might have similar deficits and aren't going to be able to write a petition the same way that an attorney would. Dealing with that petition, you only focused on two sentences in his pro se petition. What about all the other claims that are just arguable at this point in the proceedings? And there are other allegations in there that, of course, would potentially go to the second stage. The whole petition gets advanced to the second stage if there's a single potentially arguably meritorious allegation. Couldn't anything be arguable then? Well, there can be claims that could be found to be frivolous in a first-stage petition. Basically, the idea of the first stage is to let the court take a quick look at it and see, is this something that is completely frivolous and has no hope of going anywhere? And then the petition can be dismissed. And other than that, they get a counsel appointed to help them clean it up a little bit. And so I think I raise an issue that I'm very confident should merit this court reversing the dismissal and sending it back to the second stage proceedings. And at that point, if there are any other potentially meritorious issues, counsel cannot amend the petition to address those. Or just raise this issue if counsel determines that that's the only non-frivolous issue at that point after investigating further. Can we take your two sentences in a vacuum and ignore everything else to make this decision? Well, I think so, because I think it's, and I've sort of compared it in briefs to a situation where the finder of fact at the ultimate end of the proceeding, which is premature right now to do fact-finding or credibility determinations, but ultimately, even after a trial, when you've got a witness who makes contradictory statements, the trial court can still find that witness credible despite that. And I think that is why it would be possible to just look at, if there are contradictory allegations in a petition, to just look at the one that would be sufficient for now. And then, obviously, at some point in the proceedings, that could become an issue that would require credibility determinations by the court, once it gets to the third stage, which I'm not sure about. The trial counsel also might remove some of the allegations that counsel believes are incorrect or frivolous at that point, as well, especially if you have a client who, maybe he potentially had help writing this petition because of his, like, literate English proficiency, and that could be why we have this English petition that maybe has a bunch of different things in there, and once he talks to counsel, maybe it can be clarified what the actual allegation is. And, of course, trial counsel and plea counsel, who's alleged to be ineffective, would eventually be able to come in and testify as to what plea counsel's version of what happened was. So that, I think, is all something that can be resolved in subsequent stages of the proceedings. What was counsel's advice for misinformation that defendant relied on, specifically, when rejecting the plea? Well, so I think it was either, if you look at page 191, I think it was the advice to turn down the 18-year offer. And I think that page 191 of the common law record, that part of the petition pretty clearly says his advice was to turn down the offer. So it could be that. And I know that on page 188 of the common law record, it says that counsel said, that's too much, right, implying to petitioner that he shouldn't accept the plea offer and could get a better plea offer. And so I think if this Court gets as far as looking at that allegation, I do think it's basically construing the allegations as true at this point, which is first stage, it's supposed to be done. When he says, counsel said, that's too much, right, and it was implying that he shouldn't accept the plea offer, I think we have to go ahead and believe that that was true right now. Because he was there, he heard what counsel said and interpreted the way that the tone of it might be important and how counsel said it. And so I think at this stage, we're accepting it's true that by saying that, counsel meant to turn down the offer. And then he does say later in the petition that counsel said to turn down the offer. So I know the language is, there are some, it could be better written, obviously, but again, it's generally not expected that clients at the first stage are going to be able to write these things perfectly. Temporally, do we have an indication, clear in the record, of when the, that's too much, right, was stated in relation to the date of the plea? And I meant to look again and I didn't. I'm asking you. So if you haven't looked again, you have the Court's, my same excuse. Based on my recollection, I think the record sort of shows that an offer was made. It doesn't say, you know, the terms of the offer or anything like that. The record is devoid of the terms. Yes, the record doesn't have the fact that it was an 18-year offer. The petition does say that it was an 18-year offer and that it got 40 when it was turned down. But in terms of the timing, if we look at the record and when the offer was mentioned on the record by the parties, I believe, maybe the prosecutor, maybe the defense counsel, then they come back again, maybe a week after that. And then, I believe, said we want more time, defense counsel says we want more time to talk about it, and another week, and then they come back, and then I believe the guilty plea happens at that point. Thank you. So I think that's essentially the timing. You have jacked my memory, I think.  And, you know, in terms of prejudice, I think the petition says that he got an 18-year offer and ended up getting sentenced to 40 years. It says that he rejected the offer upon receiving this unreasonable advice of counsel, and under the Estrada case, that's enough. And the state agrees that this case is on point with Estrada as far as the allegations of prejudice, and it just argues that this court should decline to follow it. But I think Estrada is good persuasive authority because it's not necessary to plead all the components of the Lafleur prejudice for rejecting a guilty plea in a first-stage post-invasion petition. I think that's something that also gets cleaned up in the second stage. At this point, we have enough to know that there's at least a — it's at least arguable that there was a reasonable probability that the client was prejudiced by counsel's deficient performance when he ended up getting a much longer sentence after rejecting the offer after receiving counsel's advice. Mr. Farrell, can you say that the defendant led any specific or objective factual errors in the petition? I'm referring specifically to the People v. Resendez case out of the First District, where it talks about the need to actually allege specific and objective factual errors for it to overcome the addition of the argument that it's a frivolous pleading. So I'm looking in the petition and the sentences that you've raised and in your appeal as to whether he pled any factual basis, other than the claim that he believes that he was told that it was — shouldn't take a deal. And he should take the deal, and he couldn't get a better — or he could get maybe a better offer. Well, he specifically alleged that his plea counsel was ineffective, so — I understand. I'm just saying any factual basis, any facts, anything else, other than what you've alleged in 188 and 191. Oh, well, yes. I mean, other than that, I mean, well, he alleged that plea counsel was ineffective. He alleged that his plea counsel told him to turn down the plea on 191, and he alleged that plea counsel said, that's too much, right, implying that he shouldn't accept the plea offer on page 188. And I can't imagine how, at the first stage, that could be interpreted as not even being an arguable — or arguably stating the gist of a claim in terms of facts that you need for deficient performance. Because if the advice was to turn down the offer, that seems like that's factually as clear as you can get. The attorney could put that in at the second stage, and that would go to the third, in my opinion. And that's too much, right, I think falls in the same category, because it's still an implication that he should reject the plea offer according to what the allegations of the petition say. And I think, in any event, counsel should not have been ambiguous in any way. I mean, I think counsel should have been unequivocal that this is an excellent offer. You're not going to do better than this, and you should take it. And I think if counsel is being equivocal or ambivalent in the advice, then I think that's likely to cause the client to make a grave mistake and make an irrational decision to turn down this great offer that actually lets him be released from prison one day instead of end up — essentially, he's very likely to be in prison for the rest of his life, as it is right now. So I do think the specific facts are there in the petition to at least get it to the second stage. And I see my time has run, so unless there are any questions, I would ask this Court to reverse the court's judgment, end up dismissing the petition at the first stage, and remand for second stage proceedings with the appointment of counsel. Thank you, Mr. Verrill. Justice Bertani, anything further? I have exhausted myself. Thank you. Thank you, counsel. Thank you. Thank you. Mr. Niccolosi? Good morning, Your Honors. May it please the Court, Mr. Verrill. My name is Justin Niccolosi. I represent the state of Illinois in this case. The state asks that this Court affirm the first-stage dismissal of the defendant's post-conviction petition here. The gist of my — I don't know why I started with the word gist. The premise of my argument is basically that there was no advice given in this case that the defendant actually presented in his petition. In order for there to be deficient performance, that there has to be some sort of advice, some sort of statement, some sort of direction given by counsel that was unreasonable. In this case, I don't see where the advice is. As Your Honors were discussing with Mr. Verrill, it seems like the only statement we have here, as far as specific facts pointing to some sort of deficient performance, we're talking about the statement of that's too much right, end quote. In the defendant's petition, he even — he tried to interpret what he thought that phrase meant, and this is what he said. He said that that quote, that's too much right, was defendant's counsel, quote, implying to petitioner that he shouldn't accept the plea offer and he could get a better plea offer, end quote. So defendant's whole argument here is just — is hinging upon his interpretation of these four words spoken by his counsel. I don't believe that there's anything in those four words that we can draw a straight line to defense counsel giving some sort of specific advice to reject this plea offer. What does it mean, then? That's a good question, Your Honor. I mean, it certainly can be interpreted as I don't think — I think we can do better. Sure. On interpretation. Sure. Yeah, and you're right, Your Honor. And in my brief, I kind of speculate a little bit farther about it could have referred to prior conversations that they may have had. Maybe the defendant had some sort of a floor or a ceiling of what he would and wouldn't accept in regards to a plea offer. I know this isn't the right stage to conduct all of these speculations, but if we're talking about whether or not — you know, the gist of a claim, I'm going to use that word properly this time, it's more than a bare allegation. It's less than a fully pled claim, of course. It is a very low threshold, don't you agree? Yes, yes, 100 percent, 100 percent. But, boy, this is — it's a low threshold, and this is — there's really not much to go on here. I would argue that this isn't much, to steal words from defense counsel. There's — you know, it's not like the defendant presented his position that counsel said anything concrete. It's not — he didn't say, oh, we shouldn't take this, or, you know, we should go with a plea offer, we should go to trial. Some sort of definitive statement, some sort of specific factual statement that there was an actual discussion with some back and forth that the defendant should not take this offer. We don't have that. All we're doing is speculating, and the defendant in his position used the word implying. He's just — he just kind of took this very small phrase that's up to interpretation, he provided his interpretation, and he's saying that that is enough to say that my counsel was telling me to turn this down. The state admits that that's just not enough to even get over the low threshold at a first stage PC hearing, and the state would argue that the trial court was correct in dismissing this petition. I made an argument about prejudice in my brief, and I read defense counsel's reply brief on that. I'm going to kind of just rest on my brief regarding prejudice. But I think for there to be deficient performance, there has to be some performance, and I don't think that's too much right can exceed even the low bar that is set at the first stage. In considering whether we determine whether a just or colorable claim exists, are we entitled or are we able to consider English as a second language in a sixth grade education? Your Honor, I think his petition was understandable enough to kind of present what he was trying to present. I understand that that is something that the court probably can and will consider. But again, he was able to compile a petition here. There were other claims, as Justice Davenport mentioned, to defense counsel that were raised. So I think he was able to present enough in his petition to establish that he does have… Cognitive ability. Cognitive ability and at least enough working knowledge of the English language to be able to present his petition. And I think we just need to kind of look at the four corners of the petition more than anything, whether that's what the trial court did, was this enough, and the state would argue it's not enough, and that the dismissal at the first stage was proper. If there are any other questions, I'd be happy to answer them. Thank you, Justice Frateno. Thank you, counsel. Thank you. Thank you, Mr. O'Byrne. Thank you. So I think the state is overlooking what was said on page 191. And I just want to go ahead and read…find the language there. Okay, so on page 191 of the common law record, that part of the petition, there's an allegation that says trial counsel's advice to turn down the first offer of 18 years for only one count was objectively unreasonable. I think that's a pretty clear statement, that counsel advised him to turn down the offer and that that was objectively unreasonable and therefore ineffective. I really think that's all that would need to be written in the petition to get to the second stage. I don't think it's necessary to even look at the that too much right comment. And I don't think the state has anything to say about what's on page 191. That seems to have been ignored completely in their argument. And I do think that itself would be enough. When we get to the that's too much right part of it, yeah, I mean, I do think it's something that we can consider that Justice Fratani raised, and I believe Justice Davenport raised earlier, in terms of the fact that he's only got a sixth grade education, limited English proficiency. And we also have to think about the fact that he may be having someone else, maybe an inmate or somebody, try and translate what's being said, and there could be things that are lost in the process of that too. But even if we just look at the language and forget about that for a second, I do think, as Justice Fratani was indicating, the that's too much right is enough to show that what needs to be done here, which is clearly say 18 years is a great offer. You need to take this offer. If you don't, you're going to end up in prison for a much longer time, maybe the rest of your life. And that's the kind of advice. Now, were there counsel, there would have been a letter in the file saying just that. Yes. Yes. You know, and it doesn't even seem to be disputed. I think all of us here would agree that that's the kind of advice that you need to give. And this is an extreme situation. We were getting a great offer. That needs to be conveyed. A comment of that's too much right without more is not advice in this situation that would be considered in any way reasonable. So I do think it is enough to meet the, it is a very low standard just because we don't want to have claims lost at the first stage just because pro se defendants are not able to, you know, make some sort of mistake in articulating them. And it's very important that they go to at least the second stage so counsel can then look into this claim, potentially meritorious claim, further and potentially go on to a third stage hearing on the matter. And I do want to comment briefly on the states talking about, well, that's too much right could have referred to something else. But I do think that that's inconsistent with the allegations in the petition here. Because when it says that's too much right, implying to petitioner that he shouldn't accept the plea, he could get a better plea offer, basically that he could do better. If there was this prior conversation, then we would have to be assuming that this allegation is false. And because he wouldn't have interpreted it that way. So I do think it's inconsistent with the rule that the petition has to be interpreted as believing what's said here, not making any credibility decisions at the first stage. And it's also important to note on that that the state has not pointed to anything in the record for this. It's purely speculating on what this means and speculating contrary to the way that the defendant phrased it here, that there's something that would undermine this claim in there and make this, the fact that he took it as an implication to reject the offer false. And I don't think that that's appropriate for first stage review. Obviously, if the petition weren't amended, there could be issues in the second stage. But clearly, when it gets to the second stage, we'd be expecting counsel to file an amended petition that made it more clear and took out maybe some of the ambiguity. But what we have right now is sufficient to meet the very low first stage standard where we have to liberally interpret the language. And I do think the Hodges Court is maybe a good example there. There's a Supreme Court decision. And in that case, the defendant alleged that his attorney was ineffective for failing to present evidence on the issue of self-defense. And the Illinois Supreme Court interpreted the petition as alleging that counsel failed to present the evidence on a theory of an unreasonable belief in self-defense or, you know, citing it to be a murder, essentially. So they actually basically took this language and said, yeah, okay, but we're going to interpret it to mean this other different claim that doesn't fall in line with that language. So you're suggesting they read more into it than you're asking me to do here? Yes, absolutely. So I think if we follow Hodges, if we follow that precedent for liberal construction of post-admission petitions, they don't need to have every element. They just need to have the gist of the claim. I think this survives that review. And then, obviously, what happens next will depend on counsel and their defendant and what happens in the third stage and the factual findings there. So I see my time has run out, so I just ask this Court to reverse and revamp for further post-admission proceedings. Thank you, Mr. Bertoni. Thank you. Thank you, Mr. Brewer. Thank you. The Court will take the matter under advisement. Justice Graham will have the opportunity to listen to the oral arguments, and we will issue an opinion forthwith. Thank you.